<pre>
 1                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF OHIO
 2                         EASTERN DIVISION

 3    UNITED STATES OF AMERICA,        Case No. 1:09-cr-00535-LW-1
                                       Cleveland, Ohio
 4               Plaintiff,            Tuesday, March 1, 2011
                                       11:55 a.m.
 5          vs.

 6    SHAWN OLIVER,

 7               Defendant.

 8
                     TRANSCRIPT OF SENTENCING PROCEEDINGS
 9              BEFORE THE HONORABLE LESLEY WELLS,
                SENIOR UNITED STATES DISTRICT JUDGE
10

11    APPEARANCES:

12    For the Government:      Duane J. Deskins
                               Assistant United States Attorney
13                             801 West Superior Avenue
                               400 U.S. Court House
14                             Cleveland, Ohio   44113
                               216-622-3600
15
      For the Defendant:       William T. Doyle
16                             2000 Standard Bldg.
                               1370 Ontario Street
17                             Cleveland, Ohio   44113
                               216-363-6025
18

19

20

21    Official Court Reporter: Heidi Blueskye Geizer, RMR-CRR
                               United States District Court
22                             801 West Superior Avenue
                               7-178 U.S. Court House
23                             Cleveland, Ohio   44113
                               216-357-7092
24

25    Proceedings recorded by mechanical stenography, transcript
      produced by computer-aided transcription.
</pre>

```
         1     MORNING SESSION, TUESDAY, MARCH 1, 2011  11:55 A.M.

         2                  (Call to order of the Court.)

         3                  THE COURT:  Good morning.

         4                  ALL:  Good morning, Your Honor.

11:55:48 5                  THE COURT:  This is a sentencing hearing, and

         6     it's in Case 9-cr-535, the United States of America versus

         7     Shawn Oliver, who is present with his attorney, Mr. Doyle.

         8     Mr. Deskins is here for the United States.

         9                  MR. DESKINS:  Good morning, Your Honor.

11:56:04 10                 THE COURT:  Good morning.  And Mr. Mouhlas is

        11     here for the Probation Department, and we're going forward

        12     towards sentencing.  It is very important that you consult

        13     with your lawyer throughout the hearing.  It's not a

        14     situation where you want to try and hold your questions or

11:56:27 15    comments or anything else.  We expect you to turn to

        16     Mr. Doyle, or he'll turn to you, and you can speak to one

        17     another in private.  Its very important that you don't kind

        18     of overlook that opportunity, but use it during the hearing

        19     as we go forward, sort of following a pattern that you saw

11:56:45 20    in the presentence investigation report.  Did you read that

        21     yourself or --

        22                  THE DEFENDANT:  Yes.

        23                  THE COURT:  Okay, very well.  So we'll go

        24     forward with that, and after I've put some things on the

11:56:56 25    record that come from that report then there will be some
```

1     things I won't talk about.  Rather than just reading it out

2     loud, we'll look at certain things that I think we should

3     look at now.  There may be things that I don't talk about

4     that are important to you, and so you and your lawyer can

11:57:21  5     bring that up, and so can the government.

6          At some point I'll turn to the government and ask them

7     what they want to say about your case, and then we'll come

8     back to you, and you and your lawyer really get the final

9     opportunity to talk in the case.

11:57:38 10          And before I get into all of that I want to

11     acknowledge that there's a large number of people here with

12     you today.  If you turn around and look at all those faces

13     there you'll see you've got a lot of supporters who are

14     here, and that's a good thing.  I also have a lot of

11:57:57 15     letters, and I'm going to read these letters out loud onto

16     the record because although they aren't part of the

17     presentence investigation report, they're very important to

18     us when we are trying to find a correct sentence for

19     someone.

11:58:21 20          So Ann Oliver's letter is the one I will start with,

21     and she's been a big part of your life.

22          This says, "Judge Wells.  I'm writing this letter on

23     behalf of my son, Shawn C. Oliver, Senior, who will appear

24     before you, and she has it Tuesday, March 1, and here we

11:58:45 25     are, at 11:30.

1      "I'm aware of his criminal history and I do not

2    condone it.  He has always made bad choices and end up in

3    trouble with the law.  He was a good father to his kids, he

4    was helpful to me in that he helped me provide their basic

5    needs.  I adopted four of his children back 13 years ago to

6    keep them together as a family.

7       "Shawn had always been there for them to help them

8    with their food, clothing, and so forth.  He's truly missed

9    at home.  I have legal custody of his son and daughter, who

10   is presently 17 and 15.  He also had younger children from 6

11   months to 10 years.

12      "I have eye problems now.  I'm totally blind in one

13   eye and can't see too well out of the other one.  I'm

14   scheduled to have surgery on my eye in about a month."

15      This was written a while back, February -- no, it

16   wasn't, February 21st.  It was near here.

17      "I guess I'm asking for a little consideration in the

18   amount of time he will receive for his last infraction.  God

19   knows Shawn is needed badly at home.  I realize that he

20   messed his life up; his choice, not mine.  I'm so sorry he

21   chose the path he was on, and now when he's needed most he's

22   unable to be here with us.

23      "I am 67, almost 68 years old, and can't do what I

24   used to do.  Please, Judge Wells, if you can consider his

25   family and their need for his presence now, please take it

1       into consideration prior to sentencing him.

2           "God bless.  Sincerely yours, Ann Oliver."

3           That's a beautiful letter, and it's a powerful letter,

4       and I think she's present today in the back with the baby

12:00:58 5    right there with her.

6           I have another one, this is from you, and I'll put

7       this on the record, too.  "Dear Honorable Judge Wells, I'm

8       writing to apologize for the crime I committed.  I am to

9       appear in your courtroom for sentencing very soon.  I would

12:01:18 10   really like to let you know how truly sorry I am.

11          "I have finally come to reality with using drugs, and

12      I'm a hundred percent sure this time I have learned my

13      lesson. I am 43 years of age, and I have been using drugs

14      since the age of 15 years of age.  All I ever received in

12:01:42 15   reward was trouble.

16          "I can honestly say it took this crime along with the

17      video to make me aware of the reality in using drugs.  The

18      video of me on drugs has truly opened my eyes to the

19      powerful addiction drugs has played a serious part of my

12:02:06 20   life. Watching the video of me on drugs let me see how

21      stupid I was on them and how foolish I acted, as well."

22          And you have some little drawings on the two Os in the

23      word foolish, like little eyes, showing that you looked at

24      it, I think.

12:02:36 25       "I really bad in not knowing how serious the nature of

1    my crime was.  I really hurt inside, and watching the video

2    lets me know how my aberrant behavior on drugs has placed me

3    in a very bad situation once again.

4         "Once again, I'm sorry, and I can promise you this

12:03:02 5    will never happen again.  I have lost so much in the past

6    two years.  I lost my son, Steven Oliver, February 20th,

7    2009, my freedom December 17, 2009, and recently my wife

8    November 16th, 2010.  And now I am faced with my mother's

9    blindness.  She has been labeled legally blind about four

12:03:31 10   months back.

11        "My other bad news is my daughter has cancer.  My life

12   has been a true nightmare, and I don't believe I can handle

13   much more.  I can't say enough how sorry I am for the nature

14   of my crime.  I'm truly sorry, and I hope you can forgive

12:03:54 15   me.

16        "Thank you.  Shawn Oliver," and then you have your

17   number.

18        This is from Samuel Oliver.  Dear Judge Lesley Wells:

19   Hey, this is Shawn Oliver's son, Sam Oliver, and I've got so

12:04:15 20   much going on with school and other things in life.  I need

21   my dad here with us, because he was the one helping us with

22   everything.  I need my dad to teach me how to be a man.  I

23   was wondering if you can give him a little break because

24   everyone in my household need him really bad.

12:04:37 25        "I lost my brother in 2009, he was 18 years old, and

1   my mom last year.  So they haven't been the same, and now we

2   don't have no father there to support us like the way he

3   want to.

4       "So I'm thinking, like, if you can let him get a break

12:05:01  5   so we can have our father around, because I need him, and

6   the rest of the family do, too.  So can we please get our

7   dad back home, please.

8       "Sincerely yours, Samuel Oliver."

9       That is a very good letter, and I think maybe he's

12:05:21  10   there.  Is Samuel back there in the room?  Okay.  That's a

11   very good letter.

12       Here is another letter.  And this one doesn't

13   have -- it isn't signed, so I can't tell which of you wrote

14   this letter, but maybe you'll tell me.  It's up to you.

12:05:39  15       "Dear Judge Lesley Wells:  Hi" -- now it does tell

16   me -- "this is Shawn's 15-year-old little girl, and I got so

17   much going on in my life, and I really, really need my dad.

18   I lost my brother 2009, he was 18 then.  I just lost my mom,

19   then now my dad in jail."

12:06:01  20       You've been in jail for about a year, right?

21              THE DEFENDANT:  Yes.

22              THE COURT:  Okay.  "I need him really bad.

23   Please give him back to us.  I really need a father in my

24   little teenage life."

12:06:15  25       So who is that?  Who is your 15-year-old?

```
     1              THE DEFENDANT:  Nancy.

     2              THE COURT:  Nancy? There she is, she's here.

     3          Here is another one.  "Hello, my name is Lashonna Ann

     4   Oliver, and I am Shawn Oliver first born child.  I'm having

12:06:42  5   a hard time living without my father.  I have two kids,

     6   Shanea Oliver" --

     7              A VOICE:  Shania.

     8              THE COURT:  -- Shania Oliver, and she is seven

     9   years old" -- is she here, too?  There you are, with all

12:07:00 10   those beautiful things in your hair -- "and Sarran," is it,

    11   "Oliver, and he is three years old."

    12          Is he there?

    13              A VOICE:  Yes.

    14              THE COURT:  He's there.  Okay.  "And my dad is

12:07:17 15   their dad, too, because my kids' real fathers have never

    16   been in their life.  All they know is Shawn Oliver as their

    17   dad.  That's what they call him.  My kids ask when dad

    18   coming home every day, and I can't tell them when, because I

    19   don't know.

12:07:37 20      "I cry every night because I feel like I don't have

    21   anyone.  My mother just passed away, and she was only 41

    22   years old.  I also just lost my little brother Steve, he was

    23   only 18 years old.

    24      "I'm hurting some days, I want to kill myself.  Please

12:07:59 25   give my dad, Shawn Oliver, a chance.  Everyone makes
```

1       mistakes.  Yours truly, Lashonna Oliver."

2            So those are the letters that I have.  And some of

3       those folks are in the back of the room.  I don't know if

4       there are any more letters, but that's a whole bunch from

12:08:17  5    your family.

6            So you can see what choices you make, what a big

7       impact those have on all these people who care and love you

8       and need you.

9            Okay.  So I also have a presentence investigation

12:08:35  10   report, and that's the one that we're sort of going to go

11      through.  I have a sentencing memorandum from your lawyer,

12      who talks about what would be a fair sentence here.  We have

13      a copy of the superseding indictment in the case, and I have

14      a copy of your plea agreement in this case.

12:08:58  15   Okay. Turning to this, we have a report that was

16      prepared April 16th of last year, then revised in September,

17      and then a second revision this year, February 22, 2011.

18           Since you woke up this morning have you had any

19      alcohol or drugs, or any medicine that would make it hard

12:09:30  20   for you to participate here?

21                     THE DEFENDANT:  No.

22                     THE COURT:  Okay.  I think you've been

23      detained since February of last year.  I'd like to find out

24      from your lawyer whether there are any unresolved objections

12:09:46  25   to the report before we go into it.  There were none filed.

1          MR. DOYLE:  Right.  Your Honor, the only issue

2    I believe that would be presented to the Court at this point

3    is the criminal history issue.  The report reflects a

4    criminal history category VI, and we would be requesting of

12:10:05  5    the Court that he be considered in a criminal history

6    category V.  And for purposes of sentencing, I think it was

7    the anticipation that that would be where he was going to

8    be, although they came up with a VI.

9         I believe that the issue potentially of

12:10:26  10   over-representation -- he's at a 13, and one level would put

11   him at a V.  And it's our position we would request of the

12   Court that he be considered in a criminal history category

13   V.

14         THE COURT:  Okay.  Does the government want to

12:10:41  15   respond to that?

16         MR. DESKINS:  Your Honor.  We have read the

17   presentence report.  We believe it's properly been

18   calculated, but given the fact the government will make a

19   motion to the Court that the Court is certainly willing and

12:10:52  20   has the power to adopt the recommendation of the defense

21   counsel as category V.

22         THE COURT:  All right.  That's fine.  I'm

23   going to go through this, but that lowers somewhat your

24   guideline range.

12:11:06  25      Okay.  So let's go through this.  I'm not going to

1    read everything in it, but if there's something that I don't

2    read that you want us to discuss, we'll discuss it.

3         You had a co-defendant in this case, Carmella Rias,

4    and we consented to a jurisdictional transfer to the Western

12:11:30  5    District of Texas.

6         So the second page has a lot of things about you here.

7    It has your full name, it has your age, it has your

8    education.  You went through the tenth grade.  And it lists

9    your dependents as four adults and five minor children, and

12:11:49  10    of the nine children, four are adults and five are minors.

11         And you were staying on Francis Avenue --

12              THE DEFENDANT:  Yes.

13              THE COURT:  -- when you stopped -- okay.  You

14    see the offenses on the next page?  There are a whole lot of

12:12:06  15    them.  Counts 1, 4, 6, and 8 are the fact that you were a

16    convicted felon in possession of a firearm, and the

17    penalties there are not more than 10 years imprisonment, and

18    up to three years of supervised release.  The fines go up to

19    $250,000.

12:12:26  20         Counts 2, 5, 7, and 9 have to do with your sale of

21    firearms to a felon, and that is a class C felony with a

22    penalty range not more than 10 years imprisonment, up to

23    $250,000 in fines, and up to three years of supervised

24    release.

12:12:44  25         And then Counts 3 and 10, possession with intent to

1    distribute cocaine, that's another felony, and those ranges

2    are not more than 30 years imprisonment, up to $2 million in

3    fines, and at least six years of supervised release.  So

4    that's where you are in terms of what we are looking at

12:13:07  5    here.

6         You've been detained since February 19th of 2010, and

7    there's a whole lot of information here about the actual --

8              MR. DOYLE:  Your Honor, if I may, that was an

9    issue that I raised.  There is some difference.  The

12:13:31  10    defendant's position is that he was actually brought to CCA

11    on February the 12th.

12              THE COURT:  Okay.  That will make a

13    difference.  Okay.  So we look --

14              MR. DESKINS:  Just for the record, that does

12:13:57  15    correspond with the notes in my file, as well.

16              THE COURT:  Okay, very well.

17         So February 12th was your detention time.  And I just

18    need to write that down here so we can put it in later on.

19         In terms of the offense conduct, there is a whole lot

12:14:18  20    here, and so we'll be taking it -- back in March of 2007 you

21    met with somebody who was -- you didn't know it, but they

22    were cooperating with federal law enforcement.  And you

23    possessed and sold an Arsenal-Bulgarian, model Makarov .9

24    millimeter semi-automatic pistol, and the serial numbers are

12:14:46  25    here.

1     And you also intentionally, knowingly and

2     intentionally distributed and possessed with the intent to

3     distribute about 12.5 grams of detectable amounts of

4     cocaine.  You knew and had reasonable cause to believe that

12:15:10  5     the person had been convicted of a crime punishable by more

6     than a year.

7         The Arsenal-Bulgarian model Makarov was manufactured

8     outside Ohio, so it was transported into the state or was

9     moved in foreign commerce. Those are the sort of -- that's a

12:15:30  10     quick summary of the Counts 1, 2, and 3.

11        Counts 4 and 5, you again met with Carmella Rias with

12     an individual who you didn't know was cooperating with the

13     local law enforcement.  You possessed and sold two firearms,

14     and they're described here, for $400.  And they had

12:15:56  15     been -- they were manufactured outside of the state of Ohio

16     and transported in, so they moved in interstate commerce.

17        Counts 6 and 7, about May 22nd you and Rias met with

18     someone who was cooperating again, and at the location you

19     sold two firearms, a Lorcin Engineering -- I don't know how

12:16:19  20     you really say that -- L-380 caliber semi-automatic pistol,

21     with a serial number obliterated; a Smith & Wesson, model

22     Air Weight, 38 caliber 6-shot revolver, and you knew that

23     that individual had been convicted of a crime.  And that is

24     another gun that moved in interstate commerce.

12:16:49  25        Counts 8 and 9, you and Rias met with an individual

1    who was cooperating, and you sold two firearms, a Bryco

2    Jennings, model 48, .380 caliber semi-automatic pistol, and

3    a model Titan Tiger, .38 caliber revolver.  And again, you

4    knew that the person had been convicted of a crime, of a

12:17:21 5    felony crime, and that these were manufactured outside the

6    state of Ohio.

7         Then Count 10, you and Rias met with somebody who was

8    cooperating and at the location you knowingly and

9    intentionally distributed and possessed with the intent to

12:17:38 10    distribute approximately 13.7 grams of cocaine.

11         So that's sort of the things behind this that we're

12    talking about.

13         The victim impact:  There are so many victims.  We all

14    live every day with people who are addicted to cocaine and

12:17:57 15    people who are victims of gun sales, and so I don't have all

16    their names written down, but we don't really need those.

17         And in terms of public safety, when drugs and weapons

18    are illegally possessed and sold in the community it's a

19    terrible tragedy.

12:18:20 20         There's nothing that shows that you impeded or

21    obstructed justice.  And in terms of accepting

22    responsibility, this is what you said:  "In 2007 I was doing

23    drugs and got involved in selling drugs and firearms to

24    support my drug habit.  I'm sorry for what I did.  I will

12:18:36 25    not do anything like this again."  So that's a good

1    statement of taking responsibility.

2        Then you go over to the offense level computations,

3    and you can see that you start out with a 20 here, and there

4    are specific offense characteristics that take it up to a

12:19:00  5    30.  And we also have to put the counts together, the

6    possession with intent to distribute cocaine is a 14, and so

7    we do the calculations on that by -- because it's what's

8    called a multiple-count adjustment.  And you end up here

9    with a combined adjusted offense level under the sentencing

12:19:28 10    structure that we use of 30.  Because you accepted

11    responsibility we knock two points off that.

12        And I'll turn to the government to see if they have an

13    additional request.

14            MR. DESKINS:  Yes, Your Honor, the government

12:19:43 15    will make the additional one-point recommendation at this

16    time.

17            THE COURT:  All right.  So we go down to an

18    adjusted offense level of 27.

19        Now we put this together with your criminal history,

12:19:52 20    if you have one, and you do.  So here we go.  Page 11.  When

21    you were 17 you had a robbery, felony 3.  We're not giving

22    you points against you for these, but these are really

23    significant when we see robberies at that young age, we know

24    somebody is off track. And then also at 17 we had a

12:20:17 25    felonious assault, that's a felony 2.

1      And then when you became an adult, when you were 20

2  you had a drug case in Common Pleas Court.  We still aren't

3  giving you points under the federal system for this because

4  these are way back there, but it tells us that you've been

12:20:38  5  involved in crime for a long time.

6      At 24 you were convicted for soliciting in muni court,

7  at 25 disorderly conduct in muni court, at 26 drug abuse,

8  muni court.  This is Cleveland Muni.

9      At 26 driving under the influence, muni court.  At 26

12:21:03 10  carrying a concealed weapon, that's a third degree felony.

11  You still aren't accumulating points in the federal system.

12  We're sort of looking at all these things, but we're not

13  putting them against you here.

14      Possession of marijuana at 26, drug abuse at 26.

12:21:21 15  Fleeing and eluding at 26.  Reckless operation at 26.

16  Domestic violence at 28.  Drug paraphernalia, carrying a

17  concealed weapon, possession of marijuana.  Also at 28

18  disorderly conduct in muni court.  Driver's license problem

19  in Rocky River.  Domestic violence.  We give you a point on

12:21:45 20  that one.  That was Cleveland Muni Court.

21      Attempted possession of drugs at 29.  You got a

22  sentence on that one, suspended, and you were put on

23  probation.

24      At 30 a falsification in Rocky River.  Then 32, liquor

12:22:12 25  in your vehicle.  Another one, 32, possession of drugs, a

1      fourth degree felony, you get two points on that one.

2      Litter on public property, we don't give you points on that

3      one. Age 33, preparation of drugs for sale, a felony 5,

4      that's two points.

12:22:33   5      License required to operate, that we don't give you

6      points, but that's another thing that you're doing that's

7      against the law.

8      Trafficking in drugs, felony 1.  Now we're getting

9      really serious.  That's a three-point one.

12:22:49   10      Disorderly conduct when you're 40; 41, attempted

11      escape, a felony 3.  There's a really crazy thing to do, two

12      points you get on that one.

13      So you get a criminal history score of only 11 out of

14      all of that.  It's amazing to me because there's so many

12:23:13   15      things, but we're only adding up points to 11.

16      However, you did this offense while you were on

17      post-release control in Cuyahoga County, and so you get two

18      additional points, which gives you a total criminal history

19      of 13.  That corresponds to a criminal history category VI,

12:23:36   20      and that is a correct way to do this.  However, I will yield

21      to the government and to your lawyer to your arguments that

22      we can take you back to a V.  I mean, it makes a difference

23      to you that's pretty profound.  You have an incredible

24      criminal history.

12:24:02   25      MR. DESKINS:  Your Honor, I would like to make

1       one additional motion, and counsel would like me to have

2       that at side-bar.

3                       THE COURT:  Okay.

4                       (Proceedings had at side-bar:)

12:24:20 5              MR. DESKINS:  Your Honor, we're going to make

6       a 5K1.1 motion for a four-level reduction, and that would

7       also include the reflection of the criminal history.  The

8       defendant brought and identified Miss Rias to our attention,

9       and as a result of his cooperation she's agreed to plead

12:24:39 10     guilty to those charges.  And so we wanted to give him that

11      four-level reduction, as well as anything else the Court may

12      believe appropriate for the criminal history to account for

13      his assistance, and I told him at the time with Mr. Doyle

14      present I would make that motion, because we didn't have any

12:24:52 15     idea who she was, and he did that.

16                      THE COURT:  Okay.  Good.

17                      MR. DOYLE:  I have nothing to add.

18                      MR. DESKINS:  Thank you.

19                      THE COURT:  Okay.

12:25:00 20             (Proceedings had in open court:)

21                      THE COURT:  There are a whole lot of other

22      arrests that you had that we didn't use in calculating

23      those, but they're there.  And there are a lot of other

24      things about you besides your criminal record, although it

12:25:33 25     takes up a lot of space, there are other things about you.

1         So we look at your characteristics, your personal and

2   family information.  You really had a wonderful mother.  She

3   raised you, she was a school teacher, but she was raising

4   you, and she also then took over all of these children who

12:25:59 5   you've produced in between your times in prison.

6         So really, although you don't have any siblings, you

7   had a happy childhood.  Your mom was able to provide

8   everything you needed.  She was a high school teacher for

9   the Cleveland Board of Education.  She's now retired.  You

12:26:26 10  were a lucky man growing up.

11        Now, it's true that you didn't have a connection with

12  a father, and neither do your children in many ways because

13  you're spending so much of your life locked up, so it's

14  really hard.  You never had any traumatic events, you didn't

12:26:48 15  ever see domestic violence.  You didn't see -- your mom

16  didn't use drugs, she wasn't involved in crime.  On the

17  contrary, she was really a remarkably normal, regular,

18  noncriminal person who was doing a lot by educating children

19  in our schools.

12:27:10 20        So you moved out of your mom's home when you were 18.

21  You married Nancy Scales, and six of your children came from

22  that relationship.  You've been separated for a long time,

23  15 years.  Is it six?  Did they get that right?

24              THE DEFENDANT:  Yes.  And a stepson, Joseph.

12:27:31 25  He's right here.

1          THE COURT:  Okay.  Good.  Her -- your stepson?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Okay.

4          THE DEFENDANT:  He's my son.

12:27:41  5          THE COURT:  Yeah.  And your mom has legal

6     custody of those children, right?

7          THE DEFENDANT:  Correct.

8          THE COURT:  And your wife apparently didn't

9     want to raise them.

12:27:52  10          THE DEFENDANT:  No.  She left.

11          THE COURT:  Yeah.  Okay.

12     Then you have three other children.  And all of these

13     children are staying with your mom.  Is that right?

14          THE DEFENDANT:  No.  I mean, the other three

12:28:08  15     are staying with their mothers.

16          THE COURT:  With their mother, okay.  With

17     their mothers.  Okay.

18     And it says here that you tried to maintain contact

19     with them.  You can't do that when you're locked up.  You've

12:28:28  20     got to stop committing crimes if you're going to have

21     contact with your children.

22     Anyway, in terms of your physical situation, you've

23     got high blood pressure, hypertension.  You've had

24     medications for it.  You were shot in the stomach; the

12:28:48  25     bullet you're still carrying around with you, right?

1            THE DEFENDANT: Correct.

2            THE COURT: Okay. So that can't be

3  too -- it's got to cause you some pain, right?

4            THE DEFENDANT: Yes.

12:28:57  5            THE COURT: You're allergic to penicillin,

6  peanut butter, and nuts. You stay away from that.

7      And your mental health seems to be okay. You don't

8  have any past problems with mental issues, right?

9            THE DEFENDANT: Right.

12:29:12  10            THE COURT: Okay. You started using marijuana

11  and alcohol when you were 16, and then you laced your

12  marijuana, you did when you were about 20, and you really

13  were using it daily.

14      Then after your son died you really got involved with

12:29:35  15  cocaine. This is such a crazy response, because it just

16  takes you down and everyone around you. It's a terrible

17  tragedy when you lose a son. It's magnified when you do

18  illegal stuff, because look at this situation you're in now.

19  All of these people back here who need you, you're not going

12:29:56  20  to be with them for a while, you know? And they didn't do

21  anything wrong.

22      Anyway, cocaine is apparently your drug of choice.

23  You also sold firearms to support your drug habit, and

24  that's one of the reasons you're here today.

12:30:14  25      The longest time you've been sober was six or seven

1    years, and it's good if you've had any sobriety because it

2    shows you know what it feels like.  And for a lot of people

3    they need an escape all the time, they have to get away from

4    tough stuff, and they need escape, and so they turn to drugs

12:30:39  5    and alcohol to just, you know, get it off.  And look what

6    happens.  Illegal drugs, you spend your life in prison.

7         You've been referred for substance abuse services.

8    You did attend outpatient programs over on Broadway Avenue.

9    We didn't get any information back from them about you,

12:31:06  10    because it is significant if you ask for some help that

11    you've got some.

12         You never repeated any grades.  You were never

13    enrolled in special ed.  You were at East Tech High School,

14    but you only got to 10th grade, and you stopped going.

12:31:26  15         You said you wanted to get your GED, and you did

16    enroll in GED classes at Max Hayes at one point, so that's

17    something you can pick up on.

18         You never served in the armed forces.  You have not

19    been gainfully employed.  You were what you called a

12:31:43  20    scrapper.  You moved property and you had miscellaneous

21    things you could do for people.

22         You had a brief employment at McDonald's, you stayed

23    for three months, and then you quit.  And you were employed

24    at a car parts warehouse, you were employed at a factory,

12:32:05  25    but you couldn't remember where or when.

1           You would like to be a barber, and that's something

2      that maybe you can pursue and be good at, and give your

3      family a little help after you serve your time for these

4      offenses.  You'll be able to maybe help them more if you can

12:32:24  5      earn a living.  And I'm particularly concerned about your

6      mom.  I mean, she had one child, and now she's had -- for a

7      long time she's had a whole lot of your children.

8           In terms of your financial condition, your accounts

9      are seriously past due, and so you can't have a fine, we're

12:32:51 10      not going to give you a fine, because you don't have any way

11      of paying it.

12           It isn't the only thing we look at, these factors.  We

13      also look at what they call the 3553 factors, which I'm sure

14      your lawyer has talked to you about.

12:33:16 15           And we have to find a sentence that is the right

16      length, that is enough but not more than is necessary to

17      comply with what the law requires of us.  And so we have to

18      look at these offenses that you committed, we have to look

19      at what your history and characteristics are, and we have to

12:33:39 20      look at what's available in terms of sentencing.  And that's

21      what we're going to be doing in a little bit.

22           So now I've gotten sort of to this place, and I'm

23      going to turn to the government.  And I also don't know if

24      anyone else wants to say anything.  I'll have to wait and

12:34:04 25      see.  Okay?

1          To the government, I'll just turn to you.

2               MR. DESKINS:  Thank you very much, Your Honor.

3     The government is going to request in this case that the

4     Court impose a sentence of approximately 92 to 100 months

5     imprisonment.  The defendant, as I've mentioned to you

6     already at side-bar, has done a great deal to advance his

7     cause in this case, and I'm not going to repeat that now.

8          The Court is required, as is noted, to look at Section

9     3553(a) factors in imposing any sentence, and in this case

10     the nature and the seriousness of the offense is both

11     defined by the severity of the punishment the Court has gone

12     over here in open court, and also because of the nature of

13     the offense itself.  The gun trafficking still remains a

14     serious problem in this country.  We see that

15     internationally, as well.

16          Cocaine trafficking is also part and parcel of that.

17     It affects us both domestically, with the leading cause of

18     death for African-Americans, remains for young people, all

19     the people who you see in the courtroom, gun trafficking

20     and firearms death.

21          And cocaine trafficking, we see that in the past just

22     few years, even in Mexico, 30,000 people have died as a

23     result of the cocaine trafficking wars that rage down there

24     where we supply them guns and they supply us with dope.  And

25     cocaine is not manufactured domestically in this country, it

1    is supplied to this country.

2        The history and characteristics of this defendant, as

3    the Court has described them, he grew up by his own

4    admission, properly so, in a happy household, not being

12:35:57  5    exposed to many of the things that traditionally lead to a

6    life of crime, such as domestic violence, and family members

7    who use drugs and/or alcohol to a greater extent than is

8    certainly present here.

9        Indeed, he was raised by a hard-working mother.  The

12:36:14  10    defendant had an opportunity to attend public schools, and

11    did not take full advantage of that opportunity, a theme

12    that will play out through the course of his life.  And

13    dropped out in the tenth grade, and did not seek a high

14    school graduation or a college degree thereafter.

12:36:39  15        Some may say it is a difficult thing to grow up in a

16    single parent household, but indeed, according to this data,

17    71 percent of the people in Cleveland grow up just that way

18    if you're a person of color, and so that is not an unusual

19    matter at all. It is sad, but not unusual.

12:36:56  20        The defendant's history, he started drug use at the

21    age of 15, and has been using it longer than any of his

22    children have been alive.  He, as the Court has noted,

23    committed his first offense at 17, and at the age of 43 he's

24    committed over 25 criminal convictions -- or had 25 criminal

12:37:30  25    offenses over that same period of time.

1          Indeed, he has committed these crimes since his

2    children were born, so that all of them, all nine of them,

3    were alive when he started and continued this criminal

4    spree.

12:37:59  5          The Court has touched on the fact that even though the

6    sentencing recommendation may indeed sound harsh here,

7    you're only considering 24 percent of his prior convictions,

8    not even a third.  And even though he's 43 today, even with

9    this recommendation, he'll be in his 40s when he leaves and

12:38:24  10   steps back into the public.  So it may sound bad at this

11   point, but the reality is he will be in his 40s when he

12   returns to his family.

13          And we talked about victims of crime, but they surely

14   are victims of crime.  They have been denied the opportunity

12:38:39  15   of the same father figure they spoke so eloquently about,

16   not because they didn't want one, but because they didn't

17   get one.  And there is something that they speak to there,

18   and that is the genuine opportunity to have the same kind of

19   life that Mr. Oliver had growing up, a happy childhood with

12:39:00  20   a working parent, trying to make ends meet, without being

21   exposed to alcohol and drug abuse and crime.

22          That's what those letters speak to, and that's what

23   every family would want.  And the benefit that they have

24   over Mr. Oliver is that he had only himself, and they have

12:39:20  25   each other.  And that is the single strongest statement that

1    they have in their behalf, is that they have each other to

2    turn to and grow stronger with, and to find the courage and

3    the strength.

4         So that is also part of his history and

5    characteristics; not that he does not love his children, but

6    that he also has demons he has to fight.  He spoke about

7    that in his own letter.  And that doesn't mean that being

8    sanctioned for what he did is inconsistent with that.  It

9    only demonstrates that he accepts that, that he can both be

10   punished and serve as an example of what he does not want

11   his children to follow in.

12        The deterrence factor, therefore, is important,

13   because not only are you trying to deter Mr. Oliver from

14   committing future offenses, but you also want to act in this

15   sentence to deter any member of his family from following in

16   his footsteps.

17        People say, why would they do that?  I don't know why,

18   but the sad fact is that 60 percent of the children of

19   felons become felons themselves.  That doesn't mean that

20   every child of a felon becomes a felon, but a

21   disproportionate majority do, as surely as doctors' kids and

22   athletes' kids and lawyers' kids and politicians' kids and

23   law enforcement kids become and mimic the characteristics of

24   the people that raised them.  We just don't want that to

25   happen to these kids, so we are both trying to protect the

1    public at large and also his family, as well.

2        The seriousness of the offense, again, speaks for

3    itself, and we do not want to diminish that.  So I think,

4    Your Honor, if you look back at the sentence the government

12:41:05  5    is recommending, in addition to the period of supervised

6    release of three years, we hope that the defendant will take

7    advantage of any drug abuse programs that will be made

8    available to him in prison, as well as any vocational

9    programs, so that in addition, so that he does not have at

12:41:19  10   this point following his release no assets and no

11   liabilities, and that he can find himself a trade so he can

12   be able to be a source of support, financial support for his

13   family, and also that he may participate in the Court's

14   training programs following his release, as well.

12:41:40  15       He is required by statute to pay a special assessment

16   of $100 for each count of conviction.  In this case that

17   would be $1,000 for all ten counts.  Your Honor, I think

18   that the sentence is balanced, I think it addresses all the

19   3553(a) factors.

12:42:04  20       The larger questions of how Mr. Oliver deals with his

21   life following his imprisonment, he's still a young man, is

22   yet to be written, and the same as for his family.  But I

23   think that if we believe that Mr. Oliver is prepared to go

24   forward in a positive way then we should also be equally

12:42:25  25   optimistic about his family, and that they're going to go

1      forward in a positive way, and that nothing that we do here

2      today can make any one of those people do anything, but what

3      we do here today can inspire them to do better.

4          So Your Honor, I would request the Court adopt the

12:42:43  5      recommendation of the government and impose a sentence

6      accordingly.  Thank you.

7                    THE COURT:  Okay.  So how would you structure

8      that if it's across all these offenses?

9                    MR. DESKINS:  Certainly, Your Honor.  Looking

12:43:19  10     at the guideline calculations, I would for each of the

11     Counts 1 through 10, I would impose that same period of

12     incarceration, and I would do it concurrently for each and

13     every one of the counts.  Although I know the Court has the

14     alternative to do them consecutively, I would recommend it

12:43:37  15     be done concurrently.

16                    THE COURT:  So does that put us in a range of

17     92 to 100?

18                    MR. DESKINS:  Yes, Your Honor.

19                    THE COURT:  Okay.

12:43:45  20                    PROBATION OFFICER:  Correct.

21                    THE COURT:  Is that right?

22                    PROBATION OFFICER:  Yes, it is, Your Honor,

23     and they're all below the statutory maximum of 120 months.

24                    THE COURT:  Okay.  Well, we've heard from the

12:44:11  25     government now, and now it's time to hear from you and your

1    lawyer.

2                    MR. DOYLE:  Thank you, Your Honor.

3                    THE COURT:  Mr. Doyle.

4                    MR. DOYLE:  May I just confer momentarily with

12:44:19  5    his mother?

6                    THE COURT:  Yes, that's fine.

7                    MR. DOYLE:  Your Honor, if I may, I've spoken

8    with Mrs. Oliver, and as you've already read her

9    letter -- she was planning on saying a few words, but you've

12:45:11 10   already read her letter, and I think that really spells out

11   her feelings on it, and I think it demonstrates to you her

12   thoughts and her needs at this time.

13        First off, as the Court has already stated, we have

14   provided you with a sentencing memorandum that sets out what

12:45:32 15   we believe are significant family issues here.  And as we

16   look back to the back of the courtroom, and you already read

17   the letters, these are significant issues.  And our question

18   and our concern at this point is to have this Court consider

19   a fair sentence, but also to look at the back of the

12:45:56 20   courtroom with the thought that what would be a fair

21   sentence as it relates to getting Shawn back with his family

22   to take care of them as soon as fairly possible.

23        Now, the government has made the argument that it

24   would be a good thing to show that if he gets a strong

12:46:18 25   sentence everybody will learn about this sort of thing.  I

1     disagree with that.  I don't know that they're going to

2     learn anything from any of this other than trying to get

3     their father back with them.

4         You've heard from them in their letters, you've heard

12:46:37  5     their pleas to have their father back with them, and I'm

6     asking for you to consider this:  Yes, he's done drugs; yes,

7     he's done serious crimes, there's no question about it, but

8     those people sitting back there and that wonderful mother of

9     his bring so much to this courtroom that I'm asking for you

12:47:02 10    to consider getting him back to this family as soon as you

11    feel it's fair.

12        And I know there are guidelines and I know that we

13    have certain implementations of the guidelines; however, in

14    this case he needs to be back with his mother and these

12:47:22 15    children, and the sooner he can be back with a trade as a

16    barber, I think would be the fair way to go.  And you know,

17    I know you're going to make the right decision here, and I

18    would ask that you listen to Shawn as he's going to give you

19    what he would like to tell you.

12:47:40 20                 THE COURT:  Okay.  I'm interested to hear from

21    you.

22                 THE DEFENDANT:  How are you doing, Your Honor?

23                 THE COURT:  Okay.

24                 THE DEFENDANT:  First of all, I would like to

12:47:53 25    apologize to you, the prosecutor, and my family, along with

1    the community, for being here today.

2                     THE COURT:  Yeah, just turn around and look

3    them in the eye, and tell them what you want to tell them.

4                     THE DEFENDANT:  You know, its going to be hard

12:48:13  5    for me to express myself, you know, with my mom here and my

6    family.

7                     THE COURT:  But they're here for you.  They're

8    here to support you.

9                     THE DEFENDANT:  I know I done a lot of crimes

12:48:38 10    and everything in my lifetime, but I've gotten a lot older

11    now, and I realize that the mistakes that I made.  And

12    seeing that video of me on drugs let me know how I acted, my

13    aberrant behavior, it really touched me.

14                     THE COURT:  Uh-huh.

12:49:01 15                     THE DEFENDANT:  You know, there is a

16    difference not knowing, you know what I'm saying?  It's a

17    difference of you not knowing your mistakes and how foolish

18    you is when you on drugs and stuff like that, but I finally

19    got a chance to really see myself.

12:49:16 20                     THE COURT:  Now, how are they going to know?

21    What's going to keep them from falling into the same thing?

22                     THE DEFENDANT:  Because I'm through with

23    drugs, Your Honor.  I'm through with drugs.  I have done

24    that all my whole life.  I made some bad mistakes, and you

12:49:33 25    know, I didn't ever know, I didn't never know what drugs was

1     doing to me until I finally actually having somebody

2     videotape me.  I never seen myself on drugs.  You know, when

3     I looked at that videotape all I seen was me wanting to go

4     somewhere and get high.

12:49:51  5              THE COURT:  That's right.

6              THE DEFENDANT:  I didn't see nothing else.  I

7     didn't realize the nature of my crime.  I didn't even

8     realize I was committing a crime.  I never knew --

9              THE COURT:  Is that so?  You didn't even know

12:50:05 10    it was a crime?

11             THE DEFENDANT:  All I thought about was going

12     to get high.

13             THE COURT:  But you knew you weren't supposed

14     to be selling those drugs, right?

12:50:13 15             THE DEFENDANT:  Right.  I mean, you know, when

16     you on drugs it's kind of hard for you -- you know, you're

17     not at your normal state of mind.  And you know, I never

18     knew that I was acting like that.  I never knew that it

19     would lead to this.  You know, I never knew none of this

12:50:34 20    stuff.

21         I mean, now that I've got older, I mean, it's like I

22     lost so much in the past two years of my life.  I don't want

23     my mother to die or nothing while I'm in jail, you know?  I

24     mean, I know I done this, but like I done this, like, three

12:50:58 25    or four years ago, and even though I haven't done nothing

1 else since then, I hadn't done no other crimes that was even

2 close to what I've done now.

3         THE COURT:  Uh-huh.

4         THE DEFENDANT:  And you know, I was trying to

12:51:13 5 get myself together, you know, I didn't know this was

6 lurking in my background.

7         THE COURT:  You didn't know if you used drugs

8 it was illegal?

9         THE DEFENDANT:  Yeah, I knew, but I'm talking

12:51:25 10 about this case that I have here.  I didn't know that it was

11 in -- you know, I didn't know that I had done this

12 because -- you know, I didn't know that the government had

13 this --

14         THE COURT:  Yeah.  Well --

12:51:41 15         THE DEFENDANT:  And I didn't know, and I was

16 just -- and I didn't know about my serious drug problem, I

17 didn't know until I seen it actually when my lawyer had

18 showed me the video of me doing this stuff.

19         THE COURT:  Uh-huh.

12:51:56 20         THE DEFENDANT:  It was hard for me to even

21 acknowledge until I actually seen myself, you know, because

22 you know, all I could do is look in the mirror.  I don't see

23 myself acting on drugs.  I seen the video, and it touched

24 me.  It really touched me.  It made me feel really bad

12:52:15 25 inside.

| | |
|---|---|
| 1 | THE COURT:  Uh-huh. |
| 2 | THE DEFENDANT:  I couldn't believe it was me |
| 3 | on the videotape.  As I told my lawyer a whole bunch of |
| 4 | times, I just, you know -- I just really feel bad about this |
| 12:52:25  5 | situation.  This was one bad situation.  This is the worst |
| 6 | situation that ever occurred in my life.  You know?  And I |
| 7 | feel bad because now I got older, my mom is older, I've got |
| 8 | older kids, and you know, I just -- I really feel bad about |
| 9 | this.  I'm really sorry for doing this. |
| 12:52:47 10 | THE COURT:  Uh-huh. |
| 11 | THE DEFENDANT:  I'm truly sorry. |
| 12 | THE COURT:  Yeah.  Well, tell them. |
| 13 | THE DEFENDANT:  I'm truly sorry for doing |
| 14 | this.  And I didn't know -- |
| 12:52:57 15 | THE COURT:  They're still caring about you, |
| 16 | they are.  They wouldn't be here if they weren't. |
| 17 | THE DEFENDANT:  And I would just like to say |
| 18 | I'm sorry, Your Honor, and I'm truly sorry for not knowing |
| 19 | the nature of my crime, and I'm just sorry. |
| 12:53:17 20 | THE COURT:  Okay.  That's a good statement. |
| 21 | We do have these other factors to go over.  We have to |
| 22 | look at the nature and circumstances of the offense.  The |
| 23 | offenses are pretty much you're distributing and selling and |
| 24 | benefitting yourself by selling things illegally in the |
| 12:54:10 25 | community, two of the worst things.  One of them is weapons, |

1   which kill people every day, and you know that, and the

2   other one is drugs.  And cocaine is a horrific drug in

3   communities.  It changes the way people have options and

4   things they can do in their lives, with people who aren't

12:54:32   5   even using yet who are affected, as you can see.  So we have

6   to look at all of these things.

7        And beyond the nature and circumstances of these

8   offenses which we saw, we also have to look at your record.

9   And you've had a long, sort of consistent record.  Most of

12:54:56  10   your prior convictions are crimes punishable by more than a

11   year.  I mean, they're not simple little things.

12   Trafficking in drugs, drug abuse, all of that through the

13   county courts.

14        In terms of your own characteristics and history, you

12:55:15  15   know, you're not a kid, you're 43 years old.  And you've got

16   children, lots of children, to deal with, as well as a

17   mother who has been left with the responsibilities you

18   should have shouldered.

19        So we went through all of your felonies.  You don't

12:55:42  20   have any felony crimes of violence except you have a past

21   domestic violence conviction.

22        You were reared by a mom who gave you a very happy

23   childhood, so there's nothing back in your childhood we can

24   look at and say, oh, well, we could predict this would

12:56:04  25   happen with this guy.  We can't predict this would happen

1    with this guy.  You had a happy good childhood coming up.

2    You never repeated any grades, you weren't enrolled in

3    special ed.  You don't have any of those characteristics.

4    It's really hard to figure out what it was, but you sure

12:56:21  5    were never employed.  You weren't doing things, you were out

6    on the street, you know, using drugs, selling drugs, and

7    selling weapons.

8        You aren't suffering from any kind of diminished

9    capacity.  You're smart, you know what's going on.  You had

12:56:38  10    a close relationship with your mother, and you've got these

11    children who have a close relationship with you.

12        And so with this extensive criminal record -- at the

13    time this offense occurred you were serving another term, so

14    you have a history of not complying while you were under

12:57:07  15    court supervision, and you have a disregard for the law that

16    you've shown.  So when we look at the need for a sentence

17    imposed on you, those are characteristics that we take into

18    account.

19        It seems like you've finally done one thing that is

12:57:24  20    important that just from reading the reports I wouldn't pick

21    up on, but you talked about.  It seems from reading the

22    reports that you weren't really thinking about modifying

23    your behavior, but listening to you, it sounds to me like

24    you finally got it and that you're going to try and get your

12:57:44  25    barber skills together, and you'll be able to do something

1    productive.  So that's a big help, because that matters a

2    lot to a judge when we're sentencing.  That means that you

3    yourself figured out that you need to make some changes, and

4    that helps us make your sentence a little lighter.

12:58:02  5        Then we look at what we're dealing with in terms of

6    what the sentencing guidelines would give us a range on, and

7    your range has been sort of moved down so that with a

8    criminal history category -- you're a 27, but with a

9    criminal history category of V you're in a range of 92 to

12:58:25 10   100 months, and that's a much more narrow range, and that's

11   good, and we're talking about across your counts.

12        So taking all those things into account, pursuant to

13   the Sentencing Reform Act of 1984 and these factors, 3553

14   factors, which I don't see being particularly useful in your

12:59:05 15   case, but somewhat, it's the Court's judgment that you

16   should be committed to the custody of the Bureau of Prisons

17   and be imprisoned for a term of 92 months, which is the

18   lowest end of the sentencing range that we're in.

19              MR. DOYLE:  Your Honor, we're in criminal

12:59:21 20   history category V.

21              THE COURT:  Right.  Isn't that what it is?  92

22   to --

23              MR. DOYLE:  It is 84.  The low end in V would

24   be 84 months is the low end.

12:59:34 25              THE COURT:  Okay.  What's the high end?

1              MR. DESKINS:  105.

2              THE COURT:  105.

3              MR. DOYLE:  The range is from 84 up to 105.

4              THE COURT:  Okay.  That gives me a little more

12:59:47  5   room to move in.  So I'll give you the low end of the range,

6   which is 84 months, which is much better for you.

7              THE DEFENDANT:  Thank you, Your Honor.

8              MR. DOYLE:  Thank you.

9              THE COURT:  I think we were looking at 146

13:00:00 10   months originally, basically, so this is a big difference.

11   And part of the difference should recognize the fact that

12   you have all this support back here, and that you seem to

13   have gotten it through your head that you're not wanting to

14   live this way anymore.  So now you've got to go about

13:00:23 15   getting the skills so you can make it in the world out there

16   without breaking the law.

17       So now I have to know about supervised release terms,

18   because I think there are six years for Counts 3 and 10.

19              PROBATION OFFICER:  Correct.  Six for Count 3

13:00:39 20   and 10, Your Honor, and the others are less, up to three

21   years.

22              THE COURT:  Okay.  Supervised release is real

23   serious stuff, it's not like the county.  You have to

24   absolutely go straight when you come out and not commit any

13:00:53 25   offenses, because if you get a driving without a license

1    kind of offense, they're going to haul you down in front of

2    a federal judge, and you could go back to jail in this case.

3    Okay?  It's very supportive, but it's very, very strict.

4    Okay?  So when you do your time and you finish, and you come

13:01:11  5    out, you'd better mind the real world out here.

6         And so we're going to on release from imprisonment you

7    will be placed on supervised release for six years for

8    Counts 3 and 10, and then for three years on the other

9    counts.  Okay.  Run them all at the same time.  That

13:01:32 10    benefits you.  So you have to report in person to the

11    Probation Office wherever you're released, or here, where

12    you are sentenced.

13         There is no fine, you don't have the ability to pay a

14    fine.  There's no restitution.  You do have to pay a special

13:01:48 15    assessment of -- it's $1,000, and you have to work it off

16    while you're in prison.  The Bureau of Prisons has a

17    financial responsibility program.  If you haven't worked it

18    out then you're still going to have to pay it at some point.

19    Okay?

13:02:05 20         You can't commit any other federal, state, or local

21    crimes while you're on supervised release.  You cannot

22    illegally possess a controlled substance.

23         You have to comply with the standard conditions

24    adopted by the Court, and here are some more:  You're going

13:02:24 25    to have to submit to frequent random drug tests, but one of

1    them will be within 15 days of when you go out on

2    supervision when you are released, and then frequent random

3    tests whenever they want to give them to you.

4        You also have to participate in an approved program of

5    substance abuse treatment.  That's to support you staying

6    clean and sober, but it doesn't do it for you.  You're the

7    only person who can not use.  Okay?  They can't make you do

8    it, and they're not going to try.  If you come in with a

9    dirty urine or you fail to report, you're going to go to

10   prison.

11       You have to enter an adult program and work toward

12   getting your GED, and they'll help you figure out how to do

13   that.  You shall not possess a firearm, a destructive

14   device, or any dangerous weapon.  Shall not; you've got to

15   remember that, you cannot possess one.  And your lawyer will

16   tell you, that really limits where you stay and what goes on

17   in your life.

18       Okay.  You have to submit yourself, your person, your

19   residence, your place of business, your computer, your

20   vehicles, to warrantless searches conducted and controlled

21   by the probation officers at reasonable times, in reasonable

22   manners, based upon reasonable suspicion of contraband or

23   evidence of a violation of a condition.  If you fail to

24   submit to a search that can be grounds to revoke your

25   supervised release, and you go back to prison.

1          You have to tell anyone you're staying with that

2     that's what's going to happen.  So the premises may be

3     subject to a search under this condition because of you

4     being there.  Okay?

13:04:15  5          On the second or subsequent conviction of possession

6     of a controlled substance you will be declared not eligible

7     for all federal benefits for five years.  You have to

8     cooperate in the collection of DNA.

9          And I think I have a request from your lawyer

13:04:41 10   recommending not only that you get credit for time served

11    back to February 12th of last year, but also you be placed

12    at Farmington --

13               MR. DOYLE:  Yes.

14               THE COURT:  -- because they have a good barber

13:05:00 15   program.  I have no idea if the bureau will do that, and

16    when I finish sentencing you in a minute it's all up to

17    them.  I have no authority once you leave here to tell them

18    where to put you, that's up to them.

19          You've got the right to appeal, and your lawyer knows

13:05:24 20   about that, and you and he should talk about your right to

21    appeal.  If there's something you want to appeal about this

22    and if you did it, you're indigent, so we would appoint a

23    lawyer to represent you at no cost to you in order to file

24    an appeal.  There's a short period of time in which you

13:05:43 25   could do that, it's not something you can put off, so you

1    need to talk with Mr. Doyle about it today.

2        Anything further for the government?

3             MR. DESKINS:  Nothing further at this time.

4    Thank you, Judge.

13:05:52  5             THE COURT:  Okay.  How about for you,

6    Mr. Doyle?

7             MR. DOYLE:  We just want to make for the

8    record, Your Honor, the recommendation of the Court for the

9    drug treatment program for the defendant.

13:06:02 10             THE COURT:  I really do recommend you have a

11    treatment program, but you're the only one who can stop.  A

12    lot of people go through those programs and they don't use

13    them, and so it's a big waste of everyone's time and money,

14    but if you want it I'll make a recommendation that you have

13:06:21 15    access to that program.

16             THE DEFENDANT:  Thank you.

17             THE COURT:  Now I want to thank all these

18    folks for being here.  It's hard stuff, but you're

19    supporting him, and that's worth a lot.

13:06:36 20        Anything further?

21             MR. DESKINS:  Thank you, Judge.

22             MR. DOYLE:  Nothing further, Your Honor.

23             THE CLERK:  All rise.  This Honorable Court is

24    adjourned.

13:06:43 25                -  -  -  -  -

1          (Proceedings adjourned at 1:06 p.m.)

2

3                    C E R T I F I C A T E

4

5      I certify that the foregoing is a correct transcript

6  from the record of proceedings in the above-entitled matter.

7

8          s/Heidi Blueskye Geizer      December 30, 2014

9          Heidi Blueskye Geizer, RMR-CRR        Date

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25